IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DASHAWN CARTER,<br><br>                Petitioner,<br><br>      vs.<br><br>T. POOLE, Superintendent, Five Points Correctional Center,<br><br>                Respondent. | No. 9:07-cv-00976-JKS<br><br>MEMORANDUM DECISION |

      Petitioner Dashawn Carter, a state prisoner appearing *pro se*, has filed a Petition for Habeas Corpus relief under 28 U.S.C. § 2254. Carter is currently in the custody of the New York Department of Correctional Services, incarcerated at the Five Points Correctional Center. Respondent has answered, and Carter has replied.

I.  PRIOR PROCEEDINGS/BACKGROUND

      Following a trial by jury, Carter was convicted in the Albany County Supreme Court of Murder in the Second Degree (N.Y. Penal Law § 125.25(2)) and Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(2)).[1] The Albany County Court sentenced Carter to an indeterminate prison term of 25 years to life on the murder count and a determinate term of 15 years on the weapon-possession charge, to be served concurrently. Carter timely appealed to the Appellate Division, Third Department, which affirmed his conviction and

---

[1] The jury acquitted Carter of intentional murder, but convicted him of depraved indifference murder.

sentence in a reasoned decision, and the New York Court of Appeals denied leave to appeal on August 16, 2007.[2]  Carter timely filed his Petition for relief in this Court on September 12, 2007.

The basic facts underlying Carter's conviction, as recited by the Appellate Division, are:

> After many hours of drinking at the Twilight Lounge in the City of Albany, [Carter] had words with Courtney Young about [Carter's] repeated attempts to talk to and buy drinks for Young's female companions.  The bartender had [Carter] escorted out, but when the bar closed a short time later [Carter] was standing outside.  As Young and his companions left the bar, [Carter] pulled a gun from his waist and began shooting.  Several bullets struck Young, resulting in his death.[3]

## II.  GROUNDS RAISED/DEFENSES

Carter raises five grounds for relief:  (1) the evidence was legally insufficient to support a finding of depraved indifference; (2) the finding that he acted with depraved indifference was against the weight of the evidence; (3) the trial court erred by refusing to instruct the jury on intoxication; (4) the prosecution improperly elicited testimony concerning Carter's prior criminal history; and (5) he received ineffective assistance of counsel.  Respondent contends that Carter's first and third grounds are procedurally barred and that the fourth ground is partially procedurally barred.  Respondent asserts no other affirmative defense.[4]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, this Court cannot grant relief unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[2] *People v. Carter*, 838 N.Y.S.2d 192 (N.Y.A.D.), *lv. denied*, 874 N.E.2d 752 (N.Y. 2007).

[3] *Carter*, 838 N.Y.S.2d at 193.

[4] *See* Rules—Section 2254 Cases, Rule 5(b).

Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[7]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[9]  The Supreme Court has made it clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[10]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

---

[5] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412.

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

the trial with unfairness as to make the resulting conviction a denial of due process.'"[11]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal proceeding is whether the error had a substantial and injurious effect or influence in determining the outcome.[12]  Petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[13]

In applying this standard, this Court reviews the last reasoned decision by the state court.[14]  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[15]  Although pre-AEDPA precedent established that deference is due findings of state appellate courts,[16] the Second Circuit has left the question open with respect to AEDPA cases.[17]  In the absence of clear indication from the Second Circuit to the contrary, this Court can find no principled reason not to apply the same rule in the context of AEDPA, *i.e.*, findings of a state appellate court are presumed to be correct.

---

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[12] *See Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[13] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[14] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[15] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[16] *See Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992).

[17] *See Boyette v. Lefevre*, 246 F.3d 76, 88 n.7 (2d Cir. 2001).

IV.  DISCUSSION

**A.  Procedural Bar**.

The Appellate Division declined to address several of Carter's claims as unpreserved for appellate review because they were not properly raised before the trial court, holding:

> Several of [Carter's] contentions are unpreserved for appellate review because he failed to properly raise them before Supreme Court (*see* CPL 470.05 [2]).  [Carter] did not object to the court's refusal to give an intoxication instruction related to the depraved indifference count, and in fact acknowledged that this refusal was required by the state of the law at the time.  He also failed to object to testimony by the People's fingerprint expert that [Carter's] fingerprints were already in the criminal justice database.  [Carter's] general motions to dismiss upon the close of the People's proof and again at the conclusion of all proof were insufficient to preserve the specific claim that the evidence supported only an intentional killing and not depraved indifference murder; preservation requires a detailed motion addressing the specific deficiencies in the evidence (*see People v. Craft,* 36 A.D.3d 1145, 1146, 827 N.Y.S.2d 376 [2007]; *People v. Parker,* 29 A.D.3d 1161, 1162 n. 1, 814 N.Y.S.2d 818 [2006], *affd.* 7 N.Y.3d 907, 827 N.Y.S.2d 679, 860 N.E.2d 980 [2006]; *see also People v. Riddick,* 34 A.D.3d 923, 924-925, 823 N.Y.S.2d 594 [2006] ).  We decline to exercise our interest of justice jurisdiction to reach these issues (*see* CPL 470.15[1], [6][a] ).[18]

Respondent contends that Carter's claims that the evidence was legally insufficient (Ground 1), it was error to fail to instruct on intoxication (Ground 3), and the testimony of a fingerprint expert that Carter's fingerprints were already in the criminal justice system was improper (part of Ground 4), are procedurally barred.  This Court agrees.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[19]  This Court may not reach the merits of procedurally

---

[18] *Carter*, 838 N.Y.S.2d at 193-94.

[19] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Harris v. Reed,* 489 U.S. 255, 260 (1989).

5

defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[20]  New York's contemporaneous objection rule to preserve appellate review, New York Criminal Procedure Law § 470.05[2], is an adequate and independent state procedural rule precluding review.[21]  Unpreserved for review is also firmly established and regularly followed by the New York courts.[22]  In his traverse, Carter argues that where, as here, the state court also rules on the merits, this Court must also rule on the merits.[23]  Carter is mistaken.  Under controlling Second Circuit law, "[e]ven where the state court has ruled on the merits of a federal claim, 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default."[24]

To avoid a procedural bar, Carter must demonstrate either cause for the default and actual prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of justice.[25]  To prove a fundamental miscarriage of justice, Carter must show that a constitutional violation probably resulted in his conviction despite his actual innocence.[26]  Although, at the

---

[20] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

[21] *See Garcia v. Lewis*, 188 F.3d 71, 78-79 (2d Cir. 1999).

[22] *Rhagi v. Artuz*, 309 F.3d 103, 106-07 (2d Cir. 2002).

[23] Carter errs in this supposition.  The Appellate Division's analysis of the sufficiency of the evidence was in the context of the weight of the evidence test, not the federal constitutional sufficiency of the evidence test.

[24] *Murden v. Artuz*, 497 F.3d 178, 191 (2d Cir. 2007) (quoting *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005)).

[25] *Coleman*, 501 U.S. at 749-50 (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)).

[26] *See Schlup v. Delo,* 513 U.S. 298, 321-25 (1995) (linking miscarriages of justice to actual innocence); *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); *Murray,* 477 U.S. at 496 ("in an extraordinary case, where a constitutional violation has probably
(continued...)

gateway stage, Carter need not establish his innocence as an "absolute certainty," Carter must demonstrate that, more likely than not, no reasonable juror could find him guilty beyond a reasonable doubt.[27]

This Court further notes that, with respect to the sufficiency of the evidence claim, as discussed below on Carter's second ground, the Appellate Division did decide the weight of the evidence claim on the merits adverse to Carter. Given that determination, even if this Court were to address the sufficiency of the evidence claim, Carter would not prevail. As stated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[28] Unlike the Appellate Division in applying the New York weight of the evidence test, this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.[29] Although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[30]

---

[26](...continued)
resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.")

[27] *House v. Bell*, 547 U.S. 518, 538 (2006).

[28] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. ___, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[29] *See Schlup*, 513 U.S. at 340.

[30] *Jackson*, 443 U.S. at 324 n.16.

In this case, the Appellate Division, after re-weighing the evidence and assessing the credibility of the witnesses, found that there was sufficient evidence to support Carter's conviction under state law as determined by the Appellate Division. This Court is bound by that determination. That the evidence was sufficient under the stricter weight of the evidence test forecloses any plausible argument that it would be insufficient under the constitutional sufficiency of the evidence test enunciated by *Jackson*. Since evidence sufficient under the legal sufficiency test is not necessarily sufficient to satisfy the New York weight of the evidence test,[31] it follows, *a fortiori*, evidence sufficient to satisfy the weight of the evidence test is sufficient to satisfy the legal sufficiency test. Under these circumstances, a determination that the evidence was legally sufficient in that situation certainly would not be either "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[32]

In his Traverse, Carter essentially argues that the Appellate Division misapplied New York law. Even if that were the case, that issue is not properly before this Court in a federal habeas petition. This Court is bound by the state court determination of state law. It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[33] A fundamental principle of our federal system is "that a state

---

[31] *People v. Danielson*, 880 N.E.2d 1, 5 (N.Y. 2007).

[32] 28 U.S.C. § 2254(d); *see Eisemann v. Herbert*, 401 F.3d 102, 110 (2d Cir. 2005); *McKinney v. Artuz*, 326 F.3d 87, 103 (2d Cir. 2003).

[33] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S.
(continued...)

court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[34] A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[35] This is especially true where the highest court in the state has denied review of the lower court's decision.[36]

**B. Merits**.

Ground 2: Weight of the Evidence.

Carter argues that the evidence could only support a finding of intentional killing. Thus, according to Carter, the finding that he acted with depraved indifference is against the weight of the evidence. The Appellate Division rejected his argument, holding:

> Weighing the evidence in light of the elements as charged to the jury without objection by [Carter], we find the conviction of depraved indifference murder supported by the evidence (see People v. Cooper, 88 N.Y.2d 1056, 1058, 651 N.Y.S.2d 7, 673 N.E.2d 1234 [1996]; People v. Danielson, 40 A.D.3d 174, 176, 832 N.Y.S.2d 546, 548-550 [2007]; People v. Parker, supra at 1162 n. 2, 814 N.Y.S.2d 818). [Carter] attempts to portray this as a one-on-one, point blank shooting of a single individual, which would imply that the killing could only be intentional (see People v. Payne, 3 N.Y.3d 266, 272, 786 N.Y.S.2d 116, 819

---

[33](...continued) 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[34] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[35] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[36] *Id.*; *see West v. AT&T,* 311 U.S. 223, 237 (1940) ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

N.E.2d 634 [2004]; *People v. Gonzalez,* 1 N.Y.3d 464, 467, 775 N.Y.S.2d 224, 807 N.E.2d 273 [2004]), but the evidence supports the jury's conclusion that [Carter] instead acted with depraved indifference. While "the mere presence of third persons at the scene of a killing does not convert an intentional homicide directed at a particular victim into depraved indifference murder unless others are actually endangered" (*People v. Suarez,* 6 N.Y.3d 202, 213 n. 7, 811 N.Y.S.2d 267, 844 N.E.2d 721 [2005] [emphasis omitted] ), and more shots generally connote an intent to kill, the circumstances here show that [Carter] was wildly shooting toward several people. Young and two companions had exited the bar and one was standing at the door when [Carter] began shooting, and the three remained outside until the shooting ceased (*see People v. Craft, supra* at 1147-1148, 827 N.Y.S.2d 376; *People v. Parker, supra* at 1162-1164, 814 N.Y.S.2d 818). [Carter] fired as many as eight shots, but only four hit Young, and at least one, possibly two, of those shots hit him after ricocheting off of the ground or another surface. The remaining bullets did not strike Young and were not recovered. These remaining projectiles and the ricocheting bullets could just as easily have hit someone other than Young.

  In support of an intentional killing, the jury could have inferred from the evidence that [Carter] was angry at Young after having words with him in the bar, deliberately retrieved a gun from a friend's apartment nearby, laid in wait for Young and purposely unloaded his weapon intending to kill Young. But the jury acquitted [Carter] of intentional murder. On the other hand, other inferences would not be unreasonable, including inferences which support a depraved indifference murder count. [Carter] testified that he was very intoxicated and never had any intention to kill or injure anyone that night. The jury could have concluded that [Carter] remained outside because he was waiting for his friend in the bar or hoped to get back inside to drink more, and that he had the gun in his waistband before he entered the bar or his friend handed it to him immediately prior to the shooting incident. The fact that most of his shots missed or were not direct hits could imply that his wild shooting was intended as a warning or show of bravado, not to inflict harm. [Carter's] reckless shooting placed not only Young, but three other individuals in peril of being shot. Weighing the relative strength of conflicting inferences that may be drawn from the conflicting testimony, [Carter's] conduct could be considered wanton, deficient in moral sense and demonstrating an attitude of utter disregard for human life, as charged by Supreme Court, such that the jury's verdict was not against the weight of the evidence (*see People v. Bleakley,* 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 [1987]).[37]

---

[37] *Carter,* 838 N.Y.S.2d at 194-95.

Under New York law, the Appellate Division employs two standards of review—legal sufficiency and weight of the evidence.[38] Although related, each requires a discrete analysis. Under the legal sufficiency standard the Appellate Division must determine whether "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[39] Under the weight of the evidence standard, the court must examine the evidence further. If based upon all the credible evidence a different finding would not have been unreasonable, the Appellate Division must, giving deference to the jury on credibility, weigh the relative probative force of the conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony.[40] In determining the weight of the evidence, the Appellate Division determines credibility issues; it must assess the evidence in light of the elements of the crime as charged to the jury.[41] That is, the Appellate Division "must consider the elements of the crime, for even if the prosecution's witnesses were credible their testimony must prove the elements of the crime beyond a reasonable doubt."[42] A verdict that satisfies the legally sufficient test may nevertheless be against the weight of the evidence.[43]

---

[38] N.Y. Crim. Proc. Law § 470.15[4](b), [5].

[39] *People v. Santi*, 818 N.E.2d 1146, 1153 (N.Y. 2004) (quoting *Jackson*, 443 U.S. at 319).

[40] *People v. Bleakley*, 508 N.E.2d 672, 674-75 (N.Y. 1987).

[41] *People v. Johnson*, 890 N.E.2d 877, 879 (N.Y. 2008).

[42] *Danielson*, 880 N.E.2d at 5.

[43] *Id*.

A "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles.[44] Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review.  In making a "weight of the evidence" argument, Carter has not asserted a federal claim; instead, he has raised an error of state law, for which habeas review is not available.[45] Carter is not entitled to relief under his second ground.

Ground 4:  Improper Testimony of Prior Criminal History.

During direct examination of a police officer by the prosecutor the following occurred:

> Q What next happened?
> A Well, within a few minutes I learned from our records
>     MR. LYNCH: Objection.
> Q Within a few minutes you learned an identification of this defendant that was not Dashawn Gilbert?
> A Correct.
> Q And what other name did you come by?
> A Dashawn Carter.
> Q. Okay. And when you learned that this [portion of transcript indecipherable] by Dashawn Carter, what then was discussed?
> A. Actually, his criminal history.
>     MR. LYNCH: Objection, move to strike.
>     THE COURT: Motion to strike is granted.[46]

Following a discussion outside the presence of the jury, court reconvened and the trial court ruled:

> The People's witness, Detective Michael Nadoraski, is on the witness stand and is reminded that he's still under oath. Ladies and gentlemen, the witness's last answer is stricken from the record, and the jury is directed to disregard that answer.  And, of course, when something is stricken from the record, that means it

---

[44] *See Santi*.

[45] *Brown v. Gouverneur Corr. Facility*, 408 F. Supp. 2d 175, 183-84 (W.D.N.Y. 2006).

[46] Docket No. 13-6, p. 80.

shouldn't have been in the record in the first place.  And we rely upon you when something is stricken to disregard it.  So you're directed to disregard completely the witness's last answer if you heard it.  The People may continue direct.[47]

Carter contends that this improperly elicited testimony concerning his prior criminal history denied him a fair trial.  The Appellate Division rejected Carter's contention that he had been denied a fair trial and that a mistrial should have been declared, holding:

> A police detective improperly testified that [Carter] had a criminal history (*see People v. Mullin,* 41 N.Y.2d 475, 479, 393 N.Y.S.2d 938, 362 N.E.2d 571 [1977] ).  Although such testimony is inherently prejudicial, [Carter] was not deprived of a fair trial.  Supreme Court did not abuse its discretion in denying [Carter's] motion for a mistrial (*see People v. Birdsall,* 215 A.D.2d 878, 880, 627 N.Y.S.2d 118 [1995], *lvs. [sic] denied* 86 N.Y.2d 840, 634 N.Y.S.2d 449, 658 N.E.2d 227 [1995], 88 N.Y.2d 933, 647 N.Y.S.2d 167, 670 N.E.2d 451 [1996]; *People v. Skinner,* 211 A.D.2d 979, 979-980, 621 N.Y.S.2d 733 [1995], *lv. denied* 86 N.Y.2d 741, 631 N.Y.S.2d 621, 655 N.E.2d 718 [1995]).  Viewing this brief comment in light of the entire testimony, the court mitigated any prejudice by striking the answer and providing a prompt curative instruction (*see People v. Santiago,* 52 N.Y.2d 865, 866, 437 N.Y.S.2d 75, 418 N.E.2d 668 [1981]; *People v. Durant,* 6 A.D.3d 938, 941, 774 N.Y.S.2d 839 [2004], *lv. denied* 3 N.Y.3d 639, 782 N.Y.S.2d 410, 816 N.E.2d 200 [2004]; *People v. Birdsall, supra* at 880, 627 N.Y.S.2d 118; *People v. Nagi,* 153 A.D.2d 964, 964-965, 545 N.Y.S.2d 403 [1989]).[48]

The Due Process Clause of the Fourteenth Amendment is violated when prosecutorial misconduct "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process."[49]  In assessing whether the conduct complained of meets this test, this Court must consider "the severity of the misconduct, the measures adopted to cure it, and the certainty of

---

[47] Docket No. 13-7, p. 3.

[48] *Carter*, 838 N.Y.S.2d at 195.

[49] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

conviction in the absence of the misconduct."[50]  This test applies to improper questions in examining witnesses as well as to improper comments made in summation.[51]

In this case, as the Appellate Division found, the trial court struck the detective's answer and instructed the jury to disregard the testimony.  A jury will normally be presumed to follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury would be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be devastating to the defendant.[52]  It can hardly be said that this brief allusion to the existence of an unspecified criminal record, without elaboration as to the nature or extent to the criminal record, would be devastating to Carter.  This is particularly true in light of the fact that Carter elected to testify, and his criminal record was brought out in his direct examination by his counsel.[53]

Based upon the record before it, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[54]  Nor

---

[50] *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999).

[51] *United States v. Melendez*, 57 F.3d 238, 241 (2d Cir. 1995) (summation); *United States v. McCarthy*, 54 F.3d 51, 55-56 (2d Cir. 1995) (cross-examination).

[52] *Greer v. Miller*, 483 U.S. 756, 767 (1987) (citing *Richardson v. Marsh*, 481 U.S. 200, 208 (1987) and *Bruton v. United States*, 391 U.S. 123, 136 (1968)); *United States v. Elfgeeh*, 515 F.3d 100, 127 (2d Cir. 2008); *see United States v. DeDominicis*, 332 F.2d 207, 210 (2d Cir. 1964) ("Error in admitting evidence may be cured by instructing the jury to disregard it unless it is so prejudicial that the jury will unlikely be able to erase it from their minds.").

[53] Docket No. 13-8, pp. 8-9.

[54] 28 U.S.C. § 2254(d).

can this Court find that the state court unreasonably applied the correct legal principle to the facts of Carter's case within the scope of *Andrade-Williams-Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Carter is not entitled to relief under his fourth ground.

Ground 5:  Ineffective Assistance of Counsel.

Carter argues that because his trial counsel failed to object to the trial court submitting both intentional murder and depraved indifference to the jury, he was denied the effective assistance of counsel. The Appellate Division rejected Carter's position, holding:

> [Carter] received the effective assistance of counsel. This constitutional requirement is met if "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of representation, reveal that the attorney provided meaningful representation" (*People v. Baldi,* 54 N.Y.2d 137, 147, 444 N.Y.S.2d 893, 429 N.E.2d 400 [1981]; *see People v. Baptiste,* 306 A.D.2d 562, 569, 760 N.Y.S.2d 594 [2003], *lv. denied* 1 N.Y.3d 594, 776 N.Y.S.2d 226, 808 N.E.2d 362 [2004]). [Carter's] primary assertion alleging ineffectiveness is that trial counsel should have contested the submission of both the intentional and depraved indifference murder counts to the jury. While the Court of Appeals has held that such twin count indictments should be extremely rare, this pronouncement was made after [Carter's] trial (*see People v. Suarez,* 6 N.Y.3d 202, 215, 811 N.Y.S.2d 267, 844 N.E.2d 721 [2005], *supra* [decided approximately 10 months after [Carter's] trial]; *compare People v. Register,* 60 N.Y.2d 270, 469 N.Y.S.2d 599, 457 N.E.2d 704 [1983], *cert. denied* 466 U.S. 953, 104 S.Ct. 2159, 80 L.Ed.2d 544 [1984]). Viewing the law as of the time of trial, counsel provided [Carter] effective representation (*see People v. Baldi, supra* at 147, 444 N.Y.S.2d 893, 429 N.E.2d 400; *see also People v. Parker,* 7 N.Y.3d 907, 908, 827 N.Y.S.2d 679, 860 N.E.2d 980 [2006]).[55]

Under *Strickland*, to demonstrate ineffective assistance of counsel, Carter must show both that his counsel's performance was deficient and that the deficient performance prejudiced his

---

[55] *Carter*, 838 N.Y.S.2d at 195.

defense.[56] A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[57] Carter must show that his defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[58] An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[59] *Strickland* and its progeny do not mandate this Court act as a "Monday morning quarterback" in reviewing tactical decisions.[60]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more

---

[56] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[57] *Id*.

[58] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[59] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 658 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

[60] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[61]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.

*Strickland* requires that "[w]hen assessing whether or not counsel's performance 'fell below an objective standard of reasonableness . . . under prevailing professional norms,'" this Court must "consider the circumstances counsel faced at the time of the relevant conduct and . . . evaluate the conduct from counsel's point of view."[62] Because counsel's performance is measured by the state of the law at the time of counsel's performance, counsel is not necessarily incompetent for failing to predict changes in the law.[63] In this case, as the Appellate Division noted, the change in the law postdated Carter's trial. Under that circumstance, this Court cannot say that the decision of the Appellate Division that Carter's counsel was not ineffective was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[64] Nor, viewing the matter through the doubly-deferential lens of *Mirzayance*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Carter's case within the scope of *Andrade-Williams-Schriro*; *i.e.*, the state court decision was more than

---

[61] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420 (2009).

[62] *Davis v. Greiner,* 428 F.3d 81, 88 (2d Cir. 2005) (quoting *Strickland,* 466 U.S. at 688-89) (first ellipsis in original).

[63] *See Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001); *Jameson v. Coughlin*, 22 F.3d 427, 429 (2d Cir. 1994). Carter appears to concede this point in his Traverse.

[64] 28 U.S.C. § 2254(d).

incorrect or erroneous, its application of clearly established law was objectively unreasonable. Carter has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*. In particular, Carter has failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Carter is not entitled to relief under his fifth ground.

## V.  CONCLUSION AND ORDER

Carter is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[65] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[66]

The Clerk of the Court is to enter final judgment accordingly.

Dated:  June 7, 2010.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[65] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[66] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.